Would the clerk call the next case please? 3-14-0334 People of the State of Illinois. Appellee by Mark Austell v. Anthony Barlow. Appellant by Andrew Boyd. Mr. Boyd. Good afternoon. Good afternoon, Your Honor. Andy Boyd from the State Appellate Defender's Office on behalf of the defendant, Anthony Barlow, the police, the court, and counsel. Following a jury trial in this case, Your Honor, Anthony was convicted of first degree murder. This was in connection with the incident in which Robert Buford shot and killed the victim during the course of an armed robbery. Buford was assisted in this armed robbery by two individuals who were not charged in this case, Lakeisha Foster and Helen Starks. Anthony's trial attorney unfortunately made two significant and prejudicial errors that deprived Anthony of his right to a fair trial in this case. The first error was that counsel failed to call Robert Buford as a witness or Mr. Buford was prepared to testify that Anthony was not present at the scene of this crime and was not involved in this case. The second error that counsel made was a failure to request an accomplished witness during the instruction where the evidence showed that the only witnesses to place Anthony at the scene of the crime, which were Foster and Starks, were deeply involved in the planning and the execution of this robbery. In order to prove ineffective assistance, Your Honors, we have to make a showing as to the two problems of the familiar Strickland standard, an objective standard of reasonableness, and a substandard performance which resulted in prejudice to the defendant. As to an objective standard of reasonableness, we have to show that counsel's performance fell below the prevailing standards of professional norms, and we also have to show that counsel's performance was not the result of a sound trial strategy. As far as prejudice, we have to show there's a reasonable probability, but that counsel's errors as a result of the proceedings would have been different. So with those standards in mind, let's take a look at the two errors that counsel reports in his behavior. The first one was that counsel failed to call Buford in this case as a witness. The defense here was very simple, Your Honors, and that was that Anthony wasn't there and he didn't have anything to do with this. Counsel made this argument both in opening statements and in closing arguments, and the only witness who could have corroborated this defense was Mr. Buford, and trial counsel failed to call Mr. Buford. As far as objective unreasonableness, Your Honors, generally a defense attorney's decision as to whether to call a particular witness usually is considered a matter of trial strategy. There are a number of exceptions to that rule, and this case presents one. Counsel is ineffective for failing to present exculpatory evidence of which he or she is aware, and importantly for this case, that includes the failure to call a witness whose testimony would support an otherwise uncorroborated defense. And that's exactly what happened here. The only evidence that counsel was able to muster in support of the argument that Anthony wasn't there and didn't have anything to do with this was that Anthony had a leg injury and he wasn't able to move around on the evening in question. Unfortunately, that theory was not supported by the evidence. In fact, it was directly contradicted by the evidentiary stipulation that stated that Anthony's leg wound has healed by the date of the incident and he was able to move around comfortably using one crutch. So that part of the defense was no longer viable, and counsel was left, unfortunately, with an entirely uncorroborated defense. Was the second person on one crutch? Was the second person, Mr. Buford, on one crutch? There's no evidence of that, Your Honor. I don't believe that there's evidence. Is there any evidence that the person that they're contending is Mr. Barlow was using one crutch? That was the evidentiary stipulation, yes. So this other fellow, what would he have testified to? Mr. Buford, the evidentiary profit that a new defense counsel gave in one of the hearings was that he'd spoken with Mr. Buford, Mr. Buford stated that if he'd been called, he would have testified that he arrived at the crime scene alone. And the most important part was that Anthony wasn't there, that Mr. Barlow wasn't there. That's the most important part, that he would have testified that he arrived there alone. Anthony wasn't there. This foster planned this robbery. Didn't he give multiple versions of events? Pardon? Didn't Buford give multiple versions of the crime? He did, Your Honor, he did. Slightly different versions during the police interviews and in his evidentiary proper. We acknowledge that, but we'd underline for the court that he was very consistent in both of these, that Anthony wasn't there and didn't have anything to do with this. And the trial court did pick up on that, that yes, there were differences between the evidentiary proper, excuse me, and the police case. There easily was an issue of credibility given the conflicting, of Buford's credibility. Certainly there would have been an issue of credibility, but nobody here made a very credible witness, Your Honor. Unfortunately, Ms. Foster and Ms. Starks had significant problems with their testimony as well. Ms. Starks was a convicted felon. She'd been convicted of a federal drug possession charge. Ms. Foster was an admitted prostitute. She'd been convicted of something like an altercation with the police. So these witnesses weren't very credible either. Would Mr. Buford have credibility problems? Potentially, but the bottom line here, at least as to this particular instance of his lack of assistance, is that the defense that defense counsel had put forward here, which was that Anthony wasn't there and didn't have anything to do with this, was entirely uncorroborated. And in fact, defense counsel was in a little bit of trouble in this situation because we had these witnesses, even though they were somewhat uncredible for the reasons of their prior convictions, but you still have the two witnesses, the only two witnesses with direct evidence that Anthony was involved in this at all, are putting him at the scene of the crime and are explaining that he's deeply involved in this crime. I mean, normally this kind of issue is decided based on trial strategy, isn't it? Yes, and that's what the state argues. And I think the only way to respond to that is that, first of all, there's no evidence in the record that Mr. Buford was going to testify that Anthony was there. In fact, all the evidence in the record points in the other direction. In his police statements, he refused to name who the other individual was there. So he never said that Anthony was there during his police interview. And in his evidentiary proffer, he was explicit. He said that Mr. Barlow was not there and was not participating in this. So in the real world, aren't you playing Russian roulette to call a witness like that? No, you can't be sure exactly what he's going to say once he takes a stand. You can't. You're right. Defense counsel could not know with absolute certainty what Mr. Buford was going to say when he took the stand. You're absolutely right to point that out. The problem here is that, and I think the case law backs up this argument, is that you've got a defense that's entirely uncorroborated. In other words, as a defense attorney, you've got no other shot. You've got witnesses who are putting their client there at the scene, actively participating in this offense. In other words, you've got a fairly major problem as a defense attorney as things stand. Your only shot, your only shot here is to call Mr. Buford. And that's what the case law seems to indicate, is that when you've got a defense that's uncorroborated and you've got somebody who could potentially corroborate that, you've got to call that person and you've got to present whatever evidence that is that might corroborate your defense. Because without that, frankly, your honor, there's not much of it against us. He was there. In fact, he was the shooter. Now you've got him to beat three people. Yes, you're right. There's credibility problems. There's a potential problem with what Mr. Buford might say. And I think the response has to be that there's no indication. On the record that we have here, the record that's here before this Honorable Court, there's no indication that he was going to say that Anthony was involved in this. In fact, all the evidence points in the other direction. Did you really think the guy was going to get on the stand and say, yep, I shot the dude and the defendant here wasn't there? That's what he said. He was going to testify. Did he sign any affidavits to that effect? Not to my knowledge. The other thing to point out, your honor, the post-trial counsel indicated that Buford's potential testimony was he didn't know the other man at the crime scene and did not get a good look at the other male. Didn't get a good look at the other male. But the other man didn't have a gun. I can't recall specifically as to that. Clearly there was a gun at the scene somewhere. The other thing to point out in response to your Honor's question is that the State didn't call Mr. Buford. And he was there. He was there. He was prepared to testify. And the State didn't call him. And I don't want to veer too far into the realm of speculation, but there had to have been some reason that the State didn't call Mr. Buford too. And perhaps, just perhaps, that was because he was prepared to testify that Mr. Barlow wasn't there and didn't have anything to do with it. Or is it just as reasonable presumption B that he was going to take the fifth? Perhaps. But, again, all we have to go on in this case, because this isn't a post-conviction petition, all we've got to go on is the bare record in the trial and the things that were presented to the trial court and the two things that we've got that show that what Mr. Buford was going to testify to was, number one, the police interview where he doesn't name Mr. Barlow, and, number two, the evidentiary proper where he expressly says that he's not going to name Mr. Barlow at his participating defense. Mr. Boyd, it was two years after the crime before Mr. Barlow was charged. Do you know if Mr. Buford had already been tried? We're going a little bit outside the record here, but I can't answer Your Honor's question with the understanding that I'd have to go somewhat outside the record to do it. But I did the research, and what appeared to me was that Mr. Buford ultimately pled guilty to, I think it was aggravated assault with a weapon or something along those lines, and he received a sentence of one year, which he's currently serving. Was that before this trial? I don't know. I don't know, Your Honor. Let me take some time and talk about the second instance of ineffective assistance of counsel here, the failure to request a jury instruction on accomplice witness testimony. That one I find very interesting because the defendant claims he wasn't there, right? Yes. Okay. The accomplice instruction is when a witness states that he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. Now, he says he wasn't there, right? Mr. Varno, yes. Yes, that was the defense of trial, right? Yeah. The state, of course, argued and convinced the jury that he was there, and that's why he was convicted. I understand your argument, Your Honor. We perhaps seem to be arguing somewhat of cross purposes here, and I understand where you're coming from, but as I say, the state argued and convinced the jury that he was there, and just from a common sense point of view, there certainly can't be any question, I don't think in anybody's mind, that Foster and Starks participated in this offense on the evidence that we have here in front of us. They testified that they were present at the crime scene. Foster testified that she called the victim immediately prior to the incident and asked to see him. Her fingerprints were found on the victim's vehicle. Ms. Starks testified that she drove Anthony and Mr. Buford to the scene of the crime. During the police interviews, the detectives repeatedly, over and over and over and over again, said, in the real world, we know that these young ladies were involved in this offense. We know that these young ladies set up this offense. After the robbery, we have testimony that Ms. Starks asked Ms. Foster, where's my money? Would that go somewhat in undermining the whole trial defense you've got? The fact that you're claiming these young people were accomplices and you're claiming you weren't there. Doesn't that sort of undermine the theory of the defense here, requesting this kind of instruction? Would requesting that instruction have undermined the defense? I don't think so, Your Honor. I think you can argue things in the alternative. Lawyers do that all the time. I think you could argue on the one hand that our defense is that the defendant, Ms. Zavala, wasn't there and didn't have anything to do with that. On the other hand, the state is arguing, of course, that he was. The jury found that he was there. Given the state's argument and what the state is trying to prove up and the manner in which they're trying to prove it up, it certainly seems like these young ladies were accomplices. And even if they weren't accomplices to Mr. Barlow's involvement in this, they were certainly accomplices to Mr. Buford's involvement in this. Thank you. Let me very quickly say a word or two about the cumulative effect of counsel's errors. I'll be happy to answer any other questions Your Honor's might have. The combination of these two errors had a very significant, serious impact on Anthony's right to receive a fair trial. Anthony stood trial here with no evidence as far as theory of the case. When that evidence was readily available in the form of Mr. Buford's testimony, and he also stood trial without the jury being instructed to treat the testimony of the state's most crucial witnesses with caution when that instruction was readily available in the form of IPI 3.17. The cumulative effect of these two errors generated a substantial amount of prejudice to Anthony and to his right to a fair trial. We ask that this verdict of Buford reverse Anthony's conviction and remand the case for a new trial or any other proceedings if necessary. I'll be happy to answer any other questions that there might be. That again, whether or not you ask for a particular instruction like that as a matter of trial strategy. There could be no sound reason not to request that particular instruction here. There's no drawback to that. In light of the defense, right? That the person wasn't there? I think on any common sense interpretation of the facts, you have these individuals who are accomplices to somebody. It was either Mr. Barlow or Mr. Buford. So I think even if you were going to maintain that Anthony wasn't there and that's a defensive position throughout this, then certainly they were accomplices to Mr. Buford's actions. I think the point of this question is doesn't that then change the defense to I wasn't there? But if I was there, these two accomplices of mine are lying. The defense is that he wasn't there and that he didn't do it. If the jury were to, all the testimony went to the notion that he was there, that he was an accomplice. And that's why it was so important. The state's evidence. Yes, the state's evidence. And that's what the state was trying to prove up was that he was there. And of course, in proving that up, it was extraordinarily clear that these young ladies were accomplices to this offense. Thank you, guys. Thank you, Mr. Barlow. Mr. Oswald, good afternoon. May it please the court. I'd like to point out a typo in our brief. Sorry that I didn't catch it earlier, but on page 26 in the first paragraph, about six lines down, are the words termination petition. That's an autofill thing that somehow ended up in the final draft and the word should be just to, T-O. So I apologize about that. The first issue that the defendant has brought up that his trial attorney, Ms. Bailey, was ineffective because she did not call the co-defendant, Robert Buford, to testify for the defense. Of course, Buford was separately convicted of shooting the victim. When was that? My memory is that that conviction occurred before this trial, but I'm not positive to that. That's my reading of the record. That's my recollection. The defense theory trial, of course, was that the defendant was not present and was not involved in the crime at all. The defendant filed a pro se post-trial motion alleging the ineffective assistance of Ms. Bailey's trial counsel, but he did not attach, as you noticed, an affidavit from Mr. Buford to his motion. The defendant claims that Buford would have testified that the defendant was not present and that Lakeisha Foster planned the crime. Lakeisha, of course, is the defendant's girlfriend at the time. At the preliminary criminal hearing, the defendant claimed that Buford told the police that he did not plan the crime with the defendant. Buford went to the scene alone, and he did not know the identity of the second male at the scene. Ms. Bailey said that she spoke with Buford after the prosecution decided not to call Buford as a witness at trial. Now, Bailey's decision not to call Buford as a witness is a matter of trial strategy. She determined that the jury would not believe Buford and that he would have hurt but not helped the defendant's case. Now, following this preliminary hearing, the judge appointed new counsel to hear the ineffective assistance claim, and new counsel was Mr. Snyder, who filed a supplemental motion for a new trial incorporating this ineffective assistance claim. At the hearing on this next motion, the defendant said he believed Buford would have testified favorably because he had not implicated the defendant earlier. The defendant testified that he asked Ms. Bailey to speak with Buford. He did not know if Bailey had done so, and the defendant did not know if Buford would have testified to the trial. The defendant admitted that Buford could have testified that this crime was the defendant's idea, that the defendant had set it up and obtained a gun, and that the defendant had been the shooter himself. In his reply brief, the defendant admits that Bailey could not have known that Buford's testimony would have been, and he admits that it is conceivable that Buford would have testified that the defendant was involved in the crime. Now, on pages 9 and 10 of our brief, we detail the defense counsel's proffer of what Buford would say and the prosecution's offer of proof regarding what Ms. Bailey had told her, as you may recall from the brief, Ms. Bailey had died prior to this hearing. Now, the judge continued the motion hearing to review the DVD of Buford's statement and confession, and he found that the testimony of Mr. Snyder had proffered and that Buford claimed he would have given a trial was materially different from Buford's videotaped police confession. The trial just found that Buford apparently was prepared to testify  The trial just concluded that a rational and reasonably effective defense attorney would not have put Buford on the stand, and he found that Ms. Bailey was not ineffective for not putting Mr. Buford on the stand. Do we have that tape in the record? I'm sorry, ma'am? Do we have that tape in the record? The DVD is in the record, yes. As far as the second issue, the defendant claimed that Ms. Bailey was ineffective for not requesting the accomplice witness instruction, and she was not ineffective for not requesting this instruction because the evidence does not show that Lakeisha Foster or Helen Starks were accomplices to the crime. Our Supreme Court in her litigate said that a person is not an accomplice if they could not have been indicted for the crime, either as a principal or as an accessory, and the person's mere presence at the crime does not warrant the accomplice witness instruction. The court in Caffey said that the instruction should be given if there is probable cause to believe that the witness was guilty of the crime under an accountability theory. But here, neither woman was charged under any theory with having participated in the crime. Well, is it the fact that they were charged or they could be charged? Because I think a reasonable person could think that these two women set this guy up to be there for the robbery. But certainly you could say that because they were present at the scene, there might have been some collusion, some planning in this. But the reason they were there, all four were initially going to Helen Stark's car to buy some booze at a local store, and Lakeisha got the phone call as they were going from Mr. Mahmoud, the victim, saying, hey, you know, let's get together, you know, and they were going to have sex for a month. She's a prostitute. The defendant knew this and such. So they arranged that meeting. They met. They were going to go to a bar. The bar was closed, so they just went to a dark street to have sex. And Helen, she asked, Lakeisha asked Helen to follow them. So we still have the two men, Buford and the defendant, in Helen's car. She pulls up behind them, and Helen goes up because, Lakeisha says, let's have a three-way. But once she's in the car, Mahmoud says, no, I don't want to have sex with Helen. She starts to get out of the car. Then we have the two men coming up. So definitely Ms. Foster was going to commit a crime. She was going to prostitute herself in the car. But that doesn't mean she planned a robbery and murder of the guy who was giving her money on a routine basis. That doesn't make sense. She's essentially shooting a gravy train. You know, here's a gentleman that she's had sex with. Well, she wouldn't have been the first hooker in the world to have a John role, would she? Not in my experience in this work, no. That's true. But it still doesn't, you know, both of these women denied vehemently in their testimonies that they were not, you know, that they were accomplices. They said, no way, we were not involved in this. And consider, for instance, that Lakeisha left her purse with her ID and such in the car. If she had planned this robbery, she would have made sure that she took her ID. And then she ran to the defendant's sister's house, which is called a private. This brought up two new witnesses all of a sudden to a crime if she was involved. You don't need a lot to have a probable cause to force them to plan this whole thing. Well, I mean, certainly you could interpret the facts. I'm looking at the testimony, you know, whether or not you used the instruction. Right. I don't disagree with you. But in this case, I believe the record shows and the testimony shows that neither Lakeisha or Helen was involved in planning the robbery or the murder. What was the demand for money? When am I going to get my share? Helen Foster said she didn't make that demand. There was testimony from, I believe it was Michelle, who was the defendant's cousin, saying that she demanded money, and she said, no, I didn't demand that money. She testified to the contractor. So we've got that conflict in the testimony, and certainly the jury heard that and made their own determination as to who was believable in that situation. So I believe that the record shows that there was not enough for the accomplice witness instruction and that Ms. Bailey was not ineffective for not requesting that instruction. And certainly because the defendant says, I'm not even there, he couldn't have had an accomplice to that particular crime. So the people asked the court to find that the defense counsel was, or that Ms. Bailey was not ineffective and affirm the trial court. Do you have any other questions for me? Okay. Thank you, Mr. Olson. Mr. Boyd, were you bothering? If I could, Your Honor, I'd like to take another shot at answering your question because it was a fair one. I've taken another look in IPI 3.17. Here's what it says. When a witness says he was involved in the commission of a crime with the defendant's testimony, the witness is subject to suspicion, it should be considered by you with caution. And I think the key to answering your question here is this very first clause in this IPI. When the witness says he was involved in the commission of a crime with the defendant, and that's what happened here. Ms. Foster and Ms. Stark said that they were involved in the commission of this crime with the defendant. Of course, the defense was that the defendant wasn't there and that he didn't have anything to do with this. But it wasn't, counsel would not have been somehow conceding that Anthony was involved in this if she had requested this IPI. The only reason to request this IPI would have been simply on the plain language of that IPI. When you have witnesses who say, or are saying, whether it's true or false, but they're saying that they were involved in a commission of the crime with the defendant, that the IPI... What crime did they say they were involved in committing with the defendant? They didn't expressly say that they were involved in anything. As Mr. Osler points out, they vehemently denied it. But I think that any common sense look at the evidence in this case pretty clearly indicates that at a minimum, these young ladies were involved in, as you point out, Mr. Mahmoud getting rolled by these folks. Whether or not they planned that he was going to be shot, I don't know. But it's pretty clear, I think, to anybody who takes a common sense look at what happened here that Ms. Foster and Ms. Stark were involved at least in a robbery up to their eyebrows. There just can't be any doubt about it. And I have to say that with all due respect to the State, the State is making some pretty significant and some pretty remarkable speculative leaps about what individuals do or should have done or would have done in an extraordinarily stressful situation. I'd like to see you answer the question. Well, I understand. The only crime, I know, correct me if I'm wrong, that those two witnesses admitted to was prostitution. The only one that one of them expressly admitted to was prostitution. That's right. So they were there for the purpose of prostitution. And as we look back at this other crime, and because they didn't admit to being accomplices in committing a robbery or participating in a robbery, does that take it out of the accomplice witness condition? No, it certainly does. The law, with all due respect, Your Honor, the law is pretty clear that even if witnesses deny involvement, if you have a situation in which somebody could be indicted for a crime, then the accomplice witness ought to be given. And it was crystal clear to everybody involved in this case that these young women who were involved in this, these police detectives that were interviewing Mr. Buford, knew darn well that these young ladies had helped set this up. All the evidence shows that they were in this up to their eyebrows. Why weren't they actually, in fact, indicted by the state? I don't have the slightest idea, and I won't speculate on that. But it just seems to me that on a common sense reading of the evidence here, you've got the call to the victim from the sponsor immediately. And at the time, you've got the two young ladies placing themselves at the scene, in the car, not just at the scene, in the car. You've got forceps, fingerprints on the car. You've got the evidence afterward for the money. You have one of these two, I can't remember which one, one of the one asking the other one, where is my blanket money? I mean, that's crystal clear stuff, Your Honor, with all due respect, that these young ladies were at a minimum involved in setting up a robbery. Whether they were involved in having this poor guy shot, I don't know. But it's very clear that they had really spent a part of setting up this robbery. The shooter and the defendant were in the car with the one woman that followed the victim and the other witness to the alley? Yes. So she followed these two guys in the car? She followed these guys in the car. After Ms. Foster called Ms. Starks and said, hey, follow us. And so she tails these two around the neighborhoods and then slides in behind them and then gets out of the car. But there are three people in that following car? Yes. Right. According to her testimony, yes. Yes. That's correct. One minute, please, counsel. Any other questions from this court? Okay. Again, we would simply ask to reverse the conviction, remand the case for a new trial or any other proceedings if necessary. Thank you very much for your time, Your Honor. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel exchange.